IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 24-CR-1026-KWR |
| | ) | |
| v. | ) | |
| | ) | |
| **DAMIAN AMARILLO**, | ) | |
| | ) | |
| Defendant. | ) | |

### **UNITED STATES' SENTENCING MEMORANDUM**

Defendant Damian Amarillo shot and killed John Doe in the early morning hours of June 5, 2024. Defendant accepted responsibility and pleaded guilty. Doc. 51. Accordingly, the United States respectfully requests this Court to impose a term of sixteen years of incarceration and five years of supervised release. This sentence is sufficient, but not greater than necessary, to comply with the relevant sentencing factors under 18 U.S.C. § 3553(a). The United States has complied with the provisions of 18 U.S.C. § 3771(a)(5) during the pendency of this case, and this resolution was made in consultation with John Doe's family.

### **PROCEDURAL HISTORY**

The United States charged Defendant with the following: Second Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111, Aiding and Abetting, in violation of 18 U.S.C. § 2, and Using and Carrying a Firearm During and in Relation to a Crime of Violence, and Possessing a Firearm in Furtherance of Such Crime; Discharging Said Firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Doc. 2). The parties' entered into a Rule 11(c)(1)(C) plea agreement. (Doc. 51). Pursuant to this agreement, Defendant pleaded guilty to Count 1 of the Information, Second

1

Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111. As part of this agreement, the United States will move to dismiss the indictment following sentencing. *Id*.

Defendant's Presentence Investigation Report ("PSR") was disclosed May 22, 2026. (Doc. 55). The United States does not have informal or formal objections to the PSR. The parties entered into a Rule 11(c)(1)(C) plea agreement; however, the Defendant's total offense level is 37, with a criminal history category of I. PSR ¶ 52, 56.

## BACKGROUND

On June 5, 2024, the Jicarilla Apache Police Department (JAPD) responded to multiple calls reporting an argument and that shots fired in a neighborhood in Dulce, New Mexico. When officers arrived at the dark, chaotic scene near 48A Pumphouse Road they found John Doe, conscious and talking, with gunshot wounds to his chest, stomach, and back. John Doe could not tell officers who shot him, he could only tell them that he was having difficulty breathing. Officers attempted life-saving efforts, but John Doe stopped breathing shortly after officers arrived. PSR ¶ 10. Once the scene was secured, law enforcement located 5 spent 9mm Luger casings and a blood trail leading from a car to John Doe's body. PSR ¶ 13. No weapons located on or around John Doe, and investigators were unable to locate a firearm.

Witnesses in the neighborhood described three individuals, two male, and one female, wearing black, fleeing the scene after an argument and gunshots were heard. One witness reported to law enforcement that she saw John Doe limping towards her, telling her that he had been shot. She immediately called police while John Doe slumped against a fence. Another witness reported that they had seen an individual hiding in a storage shed on Talicia Amarillo's property. PSR ¶ 12, 14. Police searched the shed and located Defendant and Genesis Cassador hiding inside the shed wearing clothing that was consistent with descriptions given by witnesses. PSR ¶ 17.

Law enforcement continued to canvass the neighborhood and conduct interviews to attempt to understand what happened to John Doe. Dominic Amarillo, Defendant's brother, told law enforcement that Defendant had a bad temper. Dominic also said that he was missing a P320 Sig Sauer handgun and thought that Defendant possessed the firearm. Dominic said that Defendant was upset that night, and that he chased Defendant down the street but could not catch up with him. Dominic acknowledged that he knew about the shooting but denied seeing the shooting. PSR ¶ 15.

Genesis Cassador, Defendant's girlfriend, gave several different interviews to law enforcement, and was reluctant to name anyone in the shooting. Cassador said that John Doe had harassed her, and Defendant, and his friend, Damian Ayzie, had chased the male away. She acknowledged hearing gunshots but said she didn't know who shot the gun. She said she hid in the shed with Defendant and that he told her to stay in the shed despite police commands to exit. PSR ¶ 18.

Law enforcement located and arrested Damian Ayzie based on information that he was present during the shooting. Ayzie also gave varying accounts to law enforcement. Eventually, Ayzie admitted that he initially lied to law enforcement. Ayzie then told law enforcement that John Doe went to Defendant's house to meet Defendant's mom and provide her with liquor. The investigation later revealed that John Doe and Defendant's mother were in a relationship. Ayzie said that John Doe got into a physical altercation with Defendant at Defendant's house. John Doe left the house, and Defendant chased him down the road.

Once Defendant caught up with John Doe, Defendant punched John Doe in the back of the head. John Doe then turned around and ran towards Defendant. Defendant then shot John Doe four times. The OMI report revealed that John Doe died from a gunshot wound to the chest. John Doe

3

suffered two shots to the chest and one to the right hand. PSR ¶ 25. Defendant later told Ayzie that John Doe had a knife, but Ayzie did not see a knife. Ayzie denied seeing John Doe harass Cassador. After the shooting, Defendant, Ayzie, and Cassador ran away from the scene. PSR ¶ 20-21. Ayzie ran to his house to hide and put his unloaded rifle away. Defendant went to Ayzie's house and told Ayzie that he was going to clean up the shell casings. Ayzie later told law enforcement that Defendant used a Sig Sauer firearm. PSR ¶ 21.

Additional information was obtained while Defendant was held in tribal custody. Defendant authored several letters that were seized from his cell. Defendant claims that he killed John Doe in self-defense, that John Doe was drunk, and that John Doe tried to assault Cassador. PSR ¶ 26. A second letter was addressed to Ayzie, telling him to stay strong and practice a statement that Defendant wrote for him about what happened. He reiterates that John Doe had a knife and that he killed John Doe in self-defense. PSR ¶ 28. Writings were also discovered in Ayzie's cell. Ayzie wrote that Dominic bought the gun for Defendant, and that Defendant did not like John Doe because John Doe would get Defendant's mom drunk When Defendant's mom was drunk, they would fight and argue, and Defendant would get kicked out of the house. PSR ¶ 27.

## ARGUMENT

The Court must consider all factors set forth in 18 U.S.C. § 3553(a) in determining a sentence to achieve the statutory purposes of federal sentencing. *See United States v. Booker*, 543 U.S. 220 (2005). "[T]he court need not rely on every single factor—no algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018). The analysis "is aimed at distinguishing among defendants who commit a particular offense or type of offense." *United States v. Irey*, 612 F.3d 1160, 1202 (11th Cir. 2010).

### I.        Nature, Circumstances, and Seriousness of the Offense.

The nature and circumstances of Defendant's conduct are violent and tragic. Defendant chased John Doe down a street and shot him. A witness heard someone callously say, "That's what you fu**ing get," and "pu**y," after the shooting. That same witness saw John Doe limping towards her shortly after. PSR ¶ 12. Law enforcement never located the firearm, and Defendant told Ayzie that he was going to pick up the casings after the shooting. PSR ¶ 21. Defendant's actions were impulsive and violent, and he attempted to cover his tracks and prevent law enforcement from discovering what happened to John Doe.

### II.       The Impact of Defendant's Actions on John Doe's Loved Ones.

John Doe was a loved "son, brother, grandson, nephew, cousin, partner, and most importantly, a father." J.A., John Doe's daughter will "not ever get to hug her father or communicated with him again." The "whole family is in grief." K.M. poignantly notes, "Defendant ruined John Doe's life…and ruined his own life with the offense." PSR ¶ 36. They are angry, hurt, and sad, and they had to clean "blood from the street," after Defendant shot John Doe and ran away. The "biggest question" for the family is "why?" PSR ¶ 37.

### III.      Defendant's History and Characteristics.

Defendant was nineteen years at the time of this offense. Defendant lived through several adverse childhood experiences. He states plainly that he "raised himself," his father was absent, and he had a turbulent childhood with an unstable residence. His parents have a history of incarceration in Dulce, but he reports that he has a good relationship with his family. PSR ¶ 61-62. Defendant was placed in his maternal grandmother's custody when he was 10. She was his most stable maternal figure, and she passed away in 2019. PSR ¶ 62. Defendant described his home as a party house, with frequent fights, substance abuse, and police presence. PSR ¶ 63. He

experienced food insecurity, lack of nurturing, and the added responsibility of caring for his little brother in the absence of his parents. PSR ¶ 63. Defendant experienced physical abuse, specifically beatings with belts and cords, which he describes as "tough love." PSR ¶ 64. As noted in the PSR, and in the facts of this case, Defendant's mother has not acted in Defendant's best interests, however Defendant reports that he still communicates with her weekly. PSR ¶ 65.

Notably, Defendant believes he suffers from depression and PTSD, and he reports frequent marijuana use starting at age 7. He is curious about the effect his childhood trauma has had on him, but he has not yet sought help. He used alcohol to cope with things in his life and had had previous suicidal thoughts without planning. He was hospitalized for drinking too much on his birthday and his mother was drunk and he got mad and went to smoke with a friend. PSR ¶ 69-70. Defendant has no criminal history, and he graduated from high school. He was enrolled in San Juan College in Farmington, NM. He is interested in continuing his education and pursuing trades in automotive mechanics and electronics. He is currently working in CCCC while incarcerated. PSR ¶ 70-71.

IV.   **This Sentence Affords Adequate Deterrence, Represents Just Punishment. And Protects the Public.**

When imposing a sentence, a district court must consider both specific and general deterrence, that is, "the need to deter the defendant and others." *United States v. Walker*, 844 F.3d 1253, 1257 (10th Cir. 2017). Defendant has no previous criminal history, and these actions appear to be a significant deviation from prior behavior. A sentence of 16 years of incarceration followed by three years of supervised release sufficiently punishes Defendant for his actions. A period of sixteen years of incarceration will protect the public from further violent crimes, and a lengthy period of incarceration will deter Defendant from committing more violent offenses. This sentence also "reflect[s] the seriousness of the offense and promote[s] respect for the law." *Id*. It recognizes

violent actions of Defendant that led to the tragic murder of John Doe while also acknowledging the disastrous effects a traumatic childhood can have on an individual. *See* Doc. 57, Section A.

**CONCLUSION**

The United States respectfully requests that this Court impose 16 years of incarceration and 5 years of supervised release. The United States further requests that the Court impose the conditions contained in Attachment to the PSR. The United States does not oppose Defendant's request to participate in RDAP. Finally, there are no current claims for restitution.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General
RYAN ELLISON
First Assistant United States Attorney

Filed Electronically on 6/8/2026
Caitlin L. Dillon
Assistant United States Attorney
201 3rd St. N.W. Ste. 900
Albuquerque, NM 87102
(505) 346-7274

CERTIFICATE OF SERVICE:

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record.

*Filed Electronically on 6/8/2026*
Caitlin L. Dillon
Assistant United States Attorney